Opinion delivered June 27, 1888.

## Nos. 6095 and 6096.

### JESSE BRYANT *v.* THE STATE AND BEV. MCFARLAND *v.* THE STATE.

1. CONTINUANCE—NEW TRIAL.—See the statement of the case for the substance of absent testimony for which a continuance was asked for Bryant and refused, and which, in the light of the proof on the trial, being both material and probably true, demanded of the trial court the award of a new trial.

2. THEFT—EVIDENCE—CHARGE OF THE COURT.—See the opinion for evidence in a theft case which demanded of the trial court a distinct charge to the jury that, in order to constitute theft, the fraudulent intent must exist at the time of the taking.

3. SAME—RECENT POSSESSION OF STOLEN PROPERTY—FACT CASE.—To warrant the inference of guilt from possession alone, the possession must be a personal one, and must involve a distinct and conscious assertion of claim by the accused, and must be recent and unexplained. See the opinion for the substance of evidence held not to constitute such possession, and insufficient to support a conviction for theft.

APPEAL from the District Court of Milam. Tried below before the Hon. John N. Henderson.

These were separate convictions for the theft of the same animal—the appellants being separately indicted for the same offense. The penalty assessed against McFarland was a term of two years in the penitentiary, and that assessed against Bryant was a term of five years in the penitentiary.

The opinion summarizes the material evidence adduced on the trial. Bryant's application for continuance set up that he would

prove by the absent witness May that he, May, spent the night of the day on which the said Bryant and McFarland were seen driving the animal named in the indictment, at the house of the said Bryant, and that no animal was killed on Bryant's place during that night; that one Joe Evans came to Bryant's house on the next morning, and that soon afterward the witness and Bryant and Evans left the house together, and that there was no hide of any kind on Bryant's fence at that time; that Evans soon separated from witness and Bryant, and that witness and Bryant did not return to Bryant's house until late that evening, when they for the first time discovered the hide of the animal on the fence; that Bryant at once expressed surprise thereat and disclaimed any knowledge of how or when or by whom the hide was placed there.

No brief for Bryant.

*T. S. Henderson,* for McFarland.

*W. L. Davidson,* Assistant Attorney General, for the State.

Hurt, Judge. These parties were indicted in separate bills for stealing the same animal, the property of Ed Cosby. They were tried separately. When Bryant was called on for announcement he presented his application for a continuance for want of the testimony of George May, Joel Evans and Mrs. Delilah Blankenship. May resided in Bell county. Evans lives in Milam county, but was temporarily absent in Bell county. Mrs. Blankenship resides in Milam county. She was subpœnaed and afterwards attached. It is not questioned by the State that diligence was shown. These witnesses were all in attendance except May, and the contest is as to the materiality and probable truth of May's testimony.

By reference to the statement of facts it will very clearly appear that May's testimony is material, and not improbable; and the judgment as to Bryant must be reversed because of the error of the court in overruling the motion for a new trial, based upon this matter.

The facts of both of these cases required of the court a distinct charge to the effect that the fraudulent intent must exist at the time of the taking. Nathan Cook is the only witness who testified concerning the taking. He said: "On Friday, the twenty-

second of July, 1887, which was the day before the barbecue at
Buckholts, my father sent me out in the evening, as usual,
about an hour before sun down, to drive our cattle to their pen,
and I did not find the Cosby beef with our cattle. Seeing
Bryant and McFarland driving some cattle, I went to them, and
saw them driving Ed Cosby's red and white speckled beef down
the lane in the direction of Jesse Bryant's pen. They were driv-
ing it down the public road, about one-half mile from our house.
The sun was about an hour high. I rode to where they were,
and McFarland told me they were going to take it down to Jesse
Bryant's house and fasten a board over its face to keep it from
getting in the fields. As I left they drove it on towards
Bryant's house. I never saw the animal again. I knew the
animal well; it was a bad fence breaker, and Cosby had told my
father he could keep it out of the fields, and to put it in his pen
at night. We had put it in our pen almost every night during
the cropping season for two years. On Tuesday morning after
the barbecue I passed by Jesse Bryant's house and saw a fresh
hide hanging on his lot fence, and I thought I could recognize it
as the hide of Ed Cosby's beef."

J. B. Secrist, John Smith and William Deer, for defendant,
all testified that they saw the said Cosby beef on the day of the
barbecue at Buckholts, which was the day after Nathan Cook
saw defendant and Bryant driving it, and that when they saw
it it was loose on the range, and had a board tied over its face.

Nathan Cook saw the appellants with the steer; it was not
their property and they had no authority from the owner to
take the animal. Jurors might believe that these facts consti-
tute theft. Here is a taking of property which does not belong
to the parties taking—a taking without the consent of the owner.
Hence the necessity, when viewed in connection with the posi-
tive evidence of Secrist, Smith and Deer "that they saw the
Cosby beef on the day of the barbecue at Buckholts, which was
the day after Nathan Cook saw appellants driving it, and that
the steer was loose on the range," of informing the jury that
the taking must be fraudulent, etc.; that if the animal was
taken and driven to Bryant's lot for the purpose of fastening a
board over its face to keep it from getting in the fields, such
taking, though without the consent of the owner, would not be
theft.

When the searching party went to the defendant Bryant's
premises, they found a red and white speckled hide hanging on

the fence of the lot.    Defendant Bryant was at the lot when the hide was examined.    He said he knew nothing about the hide, and that he did not know who put it there, or where it came from.    The lot was one hundred yards from Bryant's house, about one hundred yards from the school house, and about sixty yards from Blankenship's house.    It was a thickly settled neighborhood, and two roads ran in view of the pen, and a traveled road ran just past the pen.    George May was at the lot when the hide was examined.

Now, while the fact that the hide of the stolen animal was found on the fence of a lot about one hundred yards from the house of the defendant Bryant is a circumstance against the accused, though slight indeed, yet to warrant the inference of guilt from possession alone, it must be a personal possession; and must involve a distinct and conscious assertion of claim by the accused, and must be recent and unexplained.    The possession in this case was recent, but as the hide was not in the personal possession of nor claimed by the accused, there was no reason for explanation.    Appellant Bryant repudiated any and all connection with the hide.

But it may be contended for the State that the personal possession or claim to the hide may be inferred from a remark made by defendant Bryant.    When Cosby, the owner, identified the hide positively, Bryant said he did not see how he (Cosby) could be so positive, as he (Bryant) had a red speckled heifer just like Cosby's.    At the same time Bryant said he knew nothing about the hide, and did not know who put it there or where it came from.    Now, from this remark about Cosby being positive that the hide was that of his beef, this, accompanied by the other statements of the defendant Bryant, it is presumed that defendant Bryant was consciously in possession of the hide, claiming the same; and thus, presuming possession, it is finally presumed that he stole the steer.

These conclusions do not logically follow, the error being in the first conclusion; for it is not a reasonable deduction from the remark under notice.    Upon this subject we would most earnestly call attention to the observations of Mr. Burrill in his work on Circumstantial Evidence, pages 135, 136, beginning with last paragraph on page 135.    We are of opinion that the evidence in neither case supports the verdict, and the judgments are reversed and the causes remanded.

Opinion delivered June 29, 1888.          *Reversed and remanded.*